DOMENGEAUX, Judge.
This is a medical malpractice action brought against an oral surgeon for the allegedly negligent extraction of teeth.
In April of 1973, plaintiff, Glynn W. Reynolds, consulted the defendant, R. Bruce Phillips, an oral surgeon in Alexandria, Louisiana, in order to have his third molars, commonly referred to as wisdom teeth, removed. On April 23, 1973, plaintiff was admitted to a hospital and, on the following day, Doctor Phillips removed the upper third molars on the right and left sides, and the lower third molar on the right side. Mr. Reynolds was subsequently discharged from the hospital, but consulted Doctor Phillips on April 27th and 30th, complaining of pain, and again on May 1st, in order to have the sutures removed. He subsequently consulted Doctor Phillips on May 4th, with complaints of pain and swelling. On this occasion, Doctor Phillips removed plaintiff’s second and first molars on the lower right side in an attempt to give him some relief. He returned to Doctor Phillips on May 7th and 11th with similar complaints. During the period of time from the original extraction, on April 24th, through Mr. Reynolds’ last visit on May 11th, Doctor Phillips treated him locally with a creosote and iodine solution and also prescribed pain medication.
Mr. Reynolds continued to experience pain and swelling. On May 13, 1973, he consulted another oral surgeon, Dr. Bernard Hollier, because Doctor Phillips was out of town. After an examination, including x-rays, Doctor Hollier determined that Mr. Reynolds had developed an infection at an extraction site, and he prescribed oral antibiotic medication.
Plaintiff had no further difficulties with his teeth for several months. However, in August and September of 1973, he went to Doctor John K. Texada for other problems in his mouth unrelated to the extractions. At this time, it was discovered by x-ray that a root tip was present in plaintiff’s mouth at the site of one of the extractions. Nothing was done to effectuate removal of the root tip, however.
In November or December of 1973, Mr. Reynolds began to develop “gum boils” around the site of the extracted first molar on the lower right side. He again consulted Doctor Hollier, the oral surgeon, in May of 1974 for this problem, but the condition continued. Mr. Reynolds attempted to treat himself for the problem until July of 1975, when he consulted Doctor Paul Miller. Doctor Miller removed the root tip on plaintiff’s lower right side at that time. Plaintiff has suffered no additional problems since the removal.
*960 Suit was originally filed on April 22,1974, against Doctor Phillips and his insurer, St. Paul Fire and Marine Insurance Company, alleging negligent extraction of a “wisdom tooth” and negligent failure to prescribe antibiotic medication. An amended petition was filed on June 1, 1976, alleging, as additional grounds of liability, that Doctor Phillips was at fault in leaving the root tip to remain in plaintiff’s mouth. After trial on the merits, judgment was rendered in favor of defendants and against the plaintiff. Plaintiff appeals.[1]
Plaintiff argues on appeal that the trial court erred in finding that he did not meet his burden of proof.
Plaintiff called as expert witnesses Doctors Hollier, Texada, and Miller. Doctor Texada stated that whether or not to leave a root tip in a patient’s mouth is a judgment question made at the time of extraction and should be left up to the discretion of the individual dentist. He also said that leaving a root tip in the patient’s mouth is not an uncommon practice in dentistry. He clearly stated that Doctor Phillips did not fall below the community standard in allowing the root tip to remain in plaintiff’s mouth. Doctor Hollier testified with regard to infections developing after an extraction. He stated that infections must be treated on a case by case basis. He further stated that there are several ways to treat infections, for example, draining, extraction of additional teeth, or use of an antibiotic. He also testified that allowing a root tip to remain in a patient’s mouth is not an unusual occurrence. Doctor Miller testified that allowing a root tip to remain would not be considered as falling below standard practice.
Considering the testimony of these witnesses specifically, and our review of the record as a whole, we can find no error on the part of the trial judge in finding that plaintiff has failed to prove his case.
Plaintiff’s second and only other specification of error is that the trial court erred in finding that no witness on behalf of plaintiff testified that defendant acted below the standard of care for the type of treatment involved.
Plaintiff is obviously referring to a statement to this effect in the trial judge’s written reasons. Actually, one of the witnesses, Doctor Miller, suggested during one phase of direct examination that defendant may have breached his standard of care. However, on cross-examination, the tenor of Doctor Miller’s testimony was clearly to the effect that defendant did not fall below the standard of care.
In any event, we fail to see the utility of the argument advanced by plaintiff. Even *961 if we were to assume that Doctor Miller’s testimony was to the effect that, defendant had fallen below acceptable standards, the testimony of Doctors Texada and Hollier to the contrary would be sufficient to affirm the trial court’s judgment as not being manifestly erroneous.
For the above reasons the judgment of the District Court is affirmed at plaintiff’s costs.
AFFIRMED.

. We note that plaintiff, defendants, and the trial judge all used the community standard in the trial of this case. We are mindful of the change in the law concerning the standard of care owed by medical specialists effected by La.R.S. 9:2794, as well as the recent application of that statute by the Supreme Court in Ardoin v. Hartford Accident & Indemnity Company, 360 So.2d 1331 (La.1978). In Ardoin, the Supreme Court stated that under La.R.S. 9:2794, the duty of a medical specialist is not governed by the professional standard within a particular locality or community, but by the professional standard within the specialist’s specialty, if the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved. The Supreme Court remanded Ardoin because the trial judge had disallowed the testimony of a cardiovascular surgeon who was going to testify as to the degree of skill possessed and care exercised by cardiovascular surgeons in general in the performance of a coronary bypass operation.
In the present case, there was no attempt by either party to introduce evidence of the medical standard prevalent in the field of oral surgery at trial, and no issue is raised on appeal. At trial, the only oral surgeon called by plaintiff was Doctor Hollier, who testified as to the standards prevalent in Alexandria, which is where he, as well as defendant, practices. Plaintiff also called Doctors Texada and Miller, who are general dentists. Both of these witnesses practice in Alexandria and both testified as to the standard prevalent in Alexandria.
We specifically point out that the issue of whether La.R.S. 9:2794 would permit the introduction of evidence concerning the standard of care prevalent in the specialty in general, for a case involving a simple tooth extraction by an oral surgeon, is not presented here. We, therefore, express no opinion with regard to this issue or the application of La.R.S. 9:2794.